IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CONNIE REGULI                          )
                                       )
v.                                     ) NO. 3:08-0774
                                       ) JUDGE CAMPBELL
SHARON GUFFEE, et al.                  )

MEMORANDUM

Pending before the Court are Defendant LaBo's Motion for Summary Judgment (Docket No. 29) and Defendants Guffee, Martin, Bennett, Rounsavall, Coffey, Zollicoffer, Casillas and Williamson County's Motion to Dismiss or for Judgment on the Pleadings (Docket No. 32).

For the reasons stated herein, Defendant LaBo's Motion for Summary Judgment (Docket No. 29) is GRANTED, and Defendants Guffee, Martin, Bennett, Rounsavall, Coffey, Zollicoffer, Casillas and Williamson County's Motion to Dismiss or for Judgment on the Pleadings (Docket No. 32) is GRANTED. All federal claims against these Defendants are DISMISSED with prejudice, and all state law claims against these Defendants are DISMISSED without prejudice.

FACTS

Plaintiff Reguli brings this action individually and on behalf of her minor daughter ("Daughter") for alleged violations by Defendants of Plaintiff's and Daughter's rights under the U.S. Constitution, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Plaintiff also brings state law claims for abuse of process, outrageous conduct and civil conspiracy. In addition, Plaintiff alleges that certain Tennessee statutes are unconstitutional.

Plaintiff's claims arise from a series of incidents involving Daughter and the Williamson County Juvenile Court between April and October of 2008. Plaintiff alleges that Daughter first

appeared before the Juvenile Court on April 30, 2008, based upon an "unruly" charge filed by Plaintiff. Amended Complaint (Docket No. 28), ¶ 16. Plaintiff alleges that no attorney was appointed for Daughter at this hearing. Plaintiff contends that, despite her notification to Defendants that Daughter was a "special needs" child, no notice was given to Daughter or Plaintiff of Daughter's rights or protection under the ADA and Rehabilitation Act. Plaintiff asserts that, at this hearing, Defendant Guffee, Juvenile Court Referee, entered an Order with numerous restrictions, including, among other things, Daughter's required attendance at a group called "Teen Peace Anger Management Program." *Id.*, ¶ 18; Docket No. 37-1, Ex. 1.

Plaintiff contends that Defendant Michael LaBo, moderator for the Teen Peace program, improperly removed Daughter from the Teen Peace group setting to personally interview her. Amended Complaint (Docket No. 28), ¶ 25. Plaintiff argues that Defendant LaBo had no permission or authority to remove Daughter from the group setting and provide individual counseling for her, that he is neither licensed as a mental health professional nor certified to counsel with developmentally delayed children, that he knew or should have known Daughter was having difficulties with being honest, and that Daughter made certain statements about her mother because she was angry at LaBo and did not want to be in the Teen Peace program. *Id.* Plaintiff admits that Daughter told Defendant LaBo she had been hit and choked by Plaintiff and that Defendant LaBo reported that information to the Tennessee Department of Children's Services ("DCS"). *Id.*; Docket No. 36-2, ¶ 9.

Plaintiff alleges that, based upon Defendant LaBo's report, DCS represented to the Juvenile Court, with no standing or pleading filed, that it had a referral that needed to be investigated against Plaintiff. Amended Complaint (Docket No. 28), ¶ 25. Plaintiff maintains that Defendant Guffee

2

unlawfully refused to have a threshold hearing to determine whether the report of abuse was reasonable, as required by Tenn. Code Ann. § 37-1-403. *Id*., ¶ 27. Plaintiff asserts that Defendant Guffee unlawfully ordered Plaintiff's other children to be interviewed without Plaintiff or another adult present. *Id*., ¶ 30. Plaintiff alleges that, despite no finding as to risk of harm or threat to the children, Defendant Guffee ordered Plaintiff to cooperate with the investigation by DCS. *Id*., ¶ 32.

Plaintiff alleges that at the next hearing before the Juvenile Court, on June 12, 2008,[1] DCS intervened in Daughter's case, without standing or filing any pleading, and sought to interview all of Plaintiff's children, with no showing of immediate or irreparable harm to the children. *Id*., ¶ 23. Plaintiff avers that when she resisted that attempt to interview her children, Defendant Guffee unlawfully detained her until she would agree to bring her other children to the court the next morning. *Id*., ¶¶ 23-24.

The June 13, 2008 ruling, reflected in a Juvenile Court Order dated June 17, 2008, included a requirement that Plaintiff cooperate with the Family Crisis Intervention Program as to all services provided. Docket No. 37-1, Ex. 3. Plaintiff contends that Defendant Guffee, in her June 13, 2008 ruling, (1) made no findings regarding Daughter's eligibility for protection under the ADA or Rehabilitation Act; (2) made no findings that Plaintiff had not taken reasonable steps to control Daughter's unruly behavior; (3) made no findings that Daughter was subject to removal; and made no findings related to the effect of detention on Daughter as related to her disability. Amended Complaint (Docket No. 28), ¶ 33.

---

[1]     The Juvenile Court Order indicates that this hearing was actually on June 13, 2008. Docket No. 37-1, Ex. 3.

Case 3:08-cv-00774   Document 44   Filed 02/19/09   Page 3 of 23 PageID #: 657

Plaintiff further alleges that, in late June of 2008, Daughter ran away. *Id.*, ¶ 38. Daughter was eventually found and transported back to Williamson County by Williamson County Juvenile Services and incarcerated on July 3, 2008. *Id.*, ¶ 39. Plaintiff contends that Daughter was incarcerated from July 3 to July 7, 2008, over Plaintiff's objection and with no finding that incarceration was necessary to prevent harm to Daughter or the community. *Id.*, ¶ 40. Plaintiff alleges that, at a detention hearing on July 7, 2008, Defendant Guffee placed Daughter on an ankle monitor, with various restrictions, despite no finding concerning the safety of the child or the community. *Id.*, ¶ 42. The Order from the July 7, 2008 hearing, dated July 22, 2008, also requires Plaintiff to submit to a parenting assessment. Docket No. 37-1, Ex. 4.

Plaintiff, who is an attorney, contends that she filed a Motion to Alter or Amend Defendant Guffee's Order from the July 7th hearing. Amended Complaint (Docket No. 28), ¶ 44. Plaintiff also contends that on July 14, 2008, she filed an objection with the Juvenile Court Clerk concerning DCS's selection and use of unlicensed professionals for mental health intervention and the continuation of the Teen Peace program. *Id.*, ¶ 45.

Plaintiff avers that, on July 23, 2008, Daughter was picked up and incarcerated for violation of a court order and Plaintiff was not allowed to visit or talk with Daughter until the following morning. *Id.*, ¶ 46. Plaintiff states that, at a hearing on July 24, 2008, Daughter pled guilty to all counts filed against her, while being represented by a court-appointed attorney. *Id.*, ¶ 47. Plaintiff asserts that, at this hearing, Defendant Guffee denied Plaintiff's Motion to Alter or Amend and released Daughter to Plaintiff under in-home detention. *Id.*

In addition, Plaintiff alleges that on July 24, 2008, DCS filed and served on Plaintiff an Expedited Long Term Petition to Adjudicate Dependency/Neglect with Request for Court Ordered

Services.  *Id*., ¶ 49.  That petition alleged that Daughter was dependent and neglected by Plaintiff.

*Id*.  On July 25, 2008, Plaintiff filed a Notice of Appeal and Motion to Stay the Order of the Referee,

complaining that Defendant Guffee had violated Plaintiff's constitutional right to parent. *Id*., ¶ 50.

Plaintiff argues that the Juvenile Court lost jurisdiction of Daughter's case at the time Plaintiff filed

the Notice of Appeal, which should have transferred the case to the Circuit Court.  *Id*.[2]

Plaintiff alleges that, on August 4, 2008, Defendant Bennett, a Youth Services Officer,

served Plaintiff with a Petition for Criminal Contempt for violation of the Juvenile Court's Orders;

Defendant Guffee issued a "body attachment order" for Daughter for failure to appear in court; and

Defendant Bennett initiated a Petition for violation of a valid court order.  *Id*., ¶¶ 53-56.  Plaintiff

maintains that, on August 5, 2008, Defendant Rounsavall initiated another Petition for violation of

a valid court order.  *Id*., ¶ 59.  Plaintiff alleges that, on August 11, 2008, Defendant Coffey removed

one of Daughter's siblings from class in a public high school, without permission or consent, to

interview her about Daughter.  *Id*., ¶ 60.

On September 9, 2008, Plaintiff filed a Petition for Writ of Habeas Corpus regarding the

allegedly illegal body attachment order of August 4th and the two Petitions for violation of a valid

court order.  *Id*., ¶ 61.  Plaintiff asserts that the Juvenile Court failed to set her Petition for an

expedited hearing and, instead, Defendants Zollicoffer and Casillas incarcerated Daughter the next

day on the same instruments.  *Id*.  Plaintiff argues that there was no evidence before the Juvenile

Court, at a hearing on September 11, 2008, to support its finding that the immediate welfare of the

child and/or protection of the community required Daughter's detention.  *Id*., ¶ 62.

---

[2]       In addition, Plaintiff contends that she filed a second Notice of Appeal on August 4,
2008.  *Id*., ¶ 54.

On September 4, 2008, the Circuit Court of Williamson County, Tennessee, dismissed Plaintiff's appeal, finding that the Notices of Appeal and Motions to Stay Order of the Referee were premature. Docket No. 31-2. The Circuit Court also denied Plaintiff's Motion to substitute herself as counsel for Daughter. *Id.*

Plaintiff contends that at a hearing before a Special Judge[3] on September 17, 2008, the guardian ad litem, Daughter's attorney, and the Juvenile Court reached an agreement about Daughter without any notice to or participation from Plaintiff, in violation of Plaintiff's right to parent. *Id.*, ¶ 63.[4] The Order from that September 17th hearing, dated October 3, 2008, reflects that the court dismissed the two petitions for violation of in-home detention, retired the petition for violation of a valid court order for six months, and ordered numerous conditions and restrictions for Daughter. Docket No. 31-5. The court also ordered that the Expedited Long Term Petition to Adjudicate Dependence/Neglect, the Motion to Alter or Amend, and the Petition for Writ of Habeas Corpus be continued to October 24, 2008. *Id.*

Plaintiff alleges that on or about October 7, 2008, DCS dropped all allegations of abuse and neglect without further investigation. Amended Complaint (Docket No. 28), ¶ 66. There is no evidence before this Court of any subsequent Juvenile or Circuit Court Orders in this case.

Plaintiff asserts claims for violation of the constitutional rights to liberty, privacy, due process, freedom from unreasonable search and seizure, and the right to parent. She also claims that

---

[3] The Order reflects that this hearing was before the Honorable Donald Harris, Special Judge of the Juvenile Court for Williamson County, Tennessee. Docket No. 31-5.

[4] In addition, Plaintiff claims that DCS refused to release a copy of "the records" to Plaintiff, violating her right to confrontation. Amended Complaint (Docket No. 28), ¶ 66.

6

Defendants have violated Daughter's rights under the ADA and the Rehabilitation Act and that Defendants have conspired to commit the state law torts of abuse of process and outrageous conduct.

## MOTION FOR SUMMARY JUDGMENT
(Defendant LaBo)

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 466 (6th Cir. 2003); *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

To prevail, the non-movant must produce specific evidence that demonstrates there is a genuine issue of material fact for trial. *Meyers*, 341 F.3d at 466. A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. Id. The non-moving party may not rest on mere allegations but must set forth specific facts showing that there is a genuine issue for trial. *Hopson,* 306 F.3d at 432.

SECTION 1983

Plaintiff first seeks redress for alleged violation of constitutional rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). Defendant LaBo contends that this claim fails because he is not a state actor. He has testified that, at all times relevant herein, he was employed by Peace, Inc. d/b/a Domestic Violence Intervention Center as coordinator for a program called Teen Peace. Docket No. 29-1. Defendant asserts that Peace, Inc. is a non-profit organization which provides social services

7

to teens with a history of violent or unruly behavior, and Plaintiff has not shown otherwise. Docket No. 29-2.

To prove a Section 1983 claim, Plaintiff must establish that: (1) she was deprived of a right secured by the United States Constitution or laws and (2) the deprivation was caused by a person acting under color of state law. *Spurlock v. Whitley*, 971 F.Supp. 1166, 1175 (M.D. Tenn. 1997).

State action may be found if, though only if, there is such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the state itself. *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001). The Supreme Court has generally developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test. *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). Plaintiff claims that Defendant LaBo is a state actor under each of these tests.

Under the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved *exclusively* to the state. *Chapman*, 319 F.3d at 833. The public function test has been interpreted narrowly. *Id*. That a private entity performs a function which serves the public does not make its acts state action. *Rendell-Baker v. Kohn*, 102 S.Ct. 2764, 2772 (1982).

Plaintiff asserts that because the Juvenile Court ordered Daughter to attend Teen Peace, which was led by Defendant LaBo, and because Defendant LaBo was required to report Daughter's progress to the Court, Defendant LaBo was performing a public function. Teen Peace was not a court-sponsored program, however. Providing social services to teens with a history of violent or unruly behavior is not a traditionally exclusive governmental function. There is no evidence before the Court that Teen Peace served only court-ordered clients or served a function traditionally

8

reserved exclusively to the state, such as holding elections or exercising eminent domain. *See Chapman*, 319 F.3d at 833.

Plaintiff asserts that Defendant LaBo is a state actor under the state compulsion test because he was directed to provide a specific program and to report the child's progress to the court. The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 565 (6th Cir. 2007). There is no evidence before the Court that the state exercised coercive power over the conduct of Teen Peace or Defendant LaBo. The Court monitored the progress of Daughter, but there is no evidence that the state monitored or controlled the conduct of Defendant Labo or that Teen Peace operated in a way that must be deemed to be action of the state.

Plaintiff contends that Defendant LaBo is a state actor under the nexus test because Daughter's attendance at the Teen Peace program would not have occurred at all "but for" the court order; in other words, attendance was court-ordered and Daughter had no choice. Under the nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the entity so that the action of the latter may be fairly treated as that of the state itself. *S.H.A.R.K.*, 499 F.3d at 565.

"Pervasive entwinement" also will support a conclusion of state action - that an ostensibly private organization ought to be charged with a public character and judged by constitutional standards. *Brentwood Academy*, 531 U.S. at 302. A challenged activity may be state action when it is entwined with governmental policies or when government is entwined in its management or

9

control. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169,176 (6th Cir. 2008).[5] The Court finds no such entwinement here.

The Court finds that the actions of Defendant LaBo, as an employee of a non-profit organization, did not have a sufficiently close nexus to the state to be fairly treated as those of the state itself. As noted above, Teen Peace operates independently of coercive power or direction of the state. Although it services clients referred from the Juvenile Court, there is no evidence before the Court of a contractual relationship between the two entities or a sufficiently close nexus that the actions of Teen Peace and Defendant Labo may be fairly treated as those of the state.

For all these reasons, the Court finds that Defendant LaBo was not a state actor for purposes of this action. His Motion for Summary Judgment on Plaintiff's Section 1983 claims is GRANTED, and those claims are DISMISSED.

REHABILITATION ACT

Section 504 of the Rehabilitation Act provides that no otherwise qualified individual with a disability shall, solely by reason of her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. *McPherson v. Michigan High School Athletic Ass'n, Inc.,* 119 F.3d 453, 459 (6th Cir. 1997) (citing 29 U.S.C. § 794(a)). Defendant LaBo asserts that Teen Peace does not receive federal assistance. Plaintiff has not shown otherwise. Thus, Plaintiff has failed to establish an essential element of her Rehabilitation Act claim, and that claim must fail.

---

[5]     The Supreme Court has explained that the state-action analysis often looks not to form but to an underlying reality. *Hughes*, 542 F.3d at 176 (citing *Brentwood Academy*, 531 U.S. at 301, n.4).

10

In addition, even if Plaintiff had alleged receipt of federal funds, there is no individual liability under the Rehabilitation Act. *Mitchell v. Chapman*, 343 F.3d 811, 825, n. 15 (6th Cir. 2003); *Davis v. Flexman*, 109 F.Supp.2d 776, 792 (S.D. Ohio 1999) ("nothing in the language of the statute or the implementing regulations indicates the existence of individual liability under the Rehabilitation Act.").

Therefore, Defendant LaBo's Motion for Summary Judgment on the Rehabilitation Act claim is GRANTED, and that claim is DISMISSED.

AMERICANS WITH DISABILITIES ACT

The ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by that entity. 42 U.S.C. § 12132. "Public entity" is defined as any state or local government or department, agency, special purpose district or other instrumentality of a state or local government. 42 U.S.C. § 12131. The definition does not include individuals. *Key v. Grayson*, 163 F.Supp.2d 697, 715 (E.D. Mich. 2001).

Therefore, Defendant LaBo's Motion for Summary Judgment is GRANTED as to Plaintiff's ADA claim, and that claim is DISMISSED.

 STATE LAW CLAIMS

Having dismissed Plaintiff's federal claims against Defendant LaBo, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against him, pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff's state law claims against Defendant LaBo are DISMISSED without prejudice.

11

## MOTION TO DISMISS/FOR JUDGMENT ON THE PLEADINGS
### (Defendants Guffee, Martin, Bennett, Rounsavall, Coffey, Zollicoffer, Casillas and Williamson County)

In considering a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept as true all factual allegations in the complaint. *Broyde v Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994). A motion to dismiss for failure to state a claim upon which relief can be granted must be viewed in the light most favorable to the party opposing the motion. *State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc.*, 856 F.Supp. 1229, 1232 (S.D. Ohio 1994). The purpose of a motion to dismiss for failure to state a claim is to allow the defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

The standard of review applicable to motions for judgment on the pleadings is the same as that applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(6), which requires the Court to construe the complaint in the light most favorable to the Plaintiff, accept all of the complaint's factual allegations as true, and determine whether the Plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006).

## INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES

Defendants Guffee, Martin, Bennett, Rounsavall, Coffey, Zollicoffer, Casillas and Williamson County (the "Williamson County Defendants") have moved to dismiss all claims against them in their official capacities. Plaintiff's claims against the individual Defendants in their official capacities must be construed as claims not against the individuals, but against their official offices. *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993).

12

Thus, those claims against the Williamson County Defendants in their official capacities are claims against Williamson County, which is already a Defendant in this action, not claims against the individuals. Therefore, the individual Defendants' Motion to Dismiss Plaintiff's claims against them in their official capacities is GRANTED for the same reasons as the Motion to Dismiss of Defendant Williamson County, and Plaintiff's claims against these Defendants in their official capacities are DISMISSED.

*ROOKER-FELDMAN* DOCTRINE

The Williamson County Defendants argue that Plaintiff's Amended Complaint should be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* Doctrine. The *Rooker-Feldman* Doctrine bars federal district courts from hearing "cases brought by state-court[6] losers complaining of injuries by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Fieger v. Ferry*, 471 F.3d 637, 642 (6th Cir. 2006) (citing *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 125 S.Ct. 1517 (2005)).

The *Rooker-Feldman* Doctrine embodies the notions that appellate review of state court decisions and the validity of state judicial proceedings is limited to the Supreme Court under 28 U.S.C. § 1257 and that federal district courts lack jurisdiction to review such matters. *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). The pertinent question in determining whether the Court is precluded by the *Rooker-Feldman* Doctrine from exercising subject matter jurisdiction over a claim is whether the source of the injury upon which a plaintiff bases her federal claim is the state court

---

[6] For purposes of the *Rooker-Feldman* Doctrine, the Williamson County Juvenile Court is a state court because it is a court within the state system and appeals are available within the state system.

13

judgment.  *Id*.  This is true regardless of whether the party challenges the validity of the state court judgment on constitutional grounds.  *Id.*

If the source of the injury is the state court decision, then the *Rooker-Feldman* Doctrine would prevent the district court from asserting jurisdiction.  *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006).  If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.  *Id*.  If the third party's actions are the product of a state court judgment, however, then a plaintiff's challenge to those actions is in fact a challenge to the judgment itself.  *Id*. at 394.

DEFENDANT GUFFEE

Plaintiff asserts that Defendant Guffee violated the constitutional, ADA and Rehabilitation Act rights of Plaintiff and Daughter in numerous ways.  Review of Plaintiff's Amended Complaint reveals, however, that the sources of Plaintiff's and Daughter's alleged injuries by Defendant Guffee are Defendant Guffee's Orders.  For example, Plaintiff contends that Defendant Guffee entered orders concerning Daughter in violation of the ADA or Rehabilitation Act because she failed to provide notice to Daughter of any protections or rights thereunder.  Plaintiff also alleges that Defendant Guffee ordered DCS to investigate Plaintiff and Plaintiff's other children without a threshold hearing to determine whether the report of abuse was reasonable.  Plaintiff contends that Defendant Guffee ordered Plaintiff to cooperate with the DCS investigation, despite no finding of risk of harm or threat to the children.  Plaintiff avers that Defendant Guffee unlawfully detained her until she agreed to comply with a Juvenile Court Order.

Plaintiff directly attacks Defendant Guffee's June 13, 2008 ruling.  Docket No. 28, ¶ 33.  Plaintiff alleges that Defendant Guffee's July 7, 2008 Order was unlawful because she made no

finding concerning the safety of the child or the community and required Plaintiff to submit to a parenting assessment. Plaintiff claims that Defendant Guffee unlawfully ordered that Plaintiff's Motion to Alter or Amend be denied. Plaintiff asserts that Defendant Guffee failed to order an expedited hearing on Plaintiff's Writ of Habeas Corpus and that on September 11, 2008, Defendant Guffee ordered, with no supporting evidence, that the immediate welfare of the child and/or protection of the community required Daughter's detention.

Plaintiff argues that *Rooker-Feldman* would bar only challenges to the Juvenile Court's finding that Daughter was "unruly." Docket No. 37, p. 13. The Juvenile Court's Orders included far more than simply a finding of unruliness, however. The alleged illegal actions of Defendant Guffee (Docket No. 37, pp. 14-15) all arise from her orders as Juvenile Court Referee, even if they were not the ultimate adjudication of "unruly."[7]

The Court finds that all Plaintiff's claims against Defendant Guffee are for injuries arising from Defendant Guffee's Orders. As such, these claims are barred by the *Rooker-Feldman* Doctrine and must be dismissed for lack of subject matter jurisdiction.[8] In addition, for the same reasons Plaintiff's ADA and Rehabilitation Act claims fail against Defendant LaBo (no individual liability), those claims fail against Defendant Guffee as well.

_____

[7]       Plaintiff claims that Defendant Guffee entered a "body attachment" order without jurisdiction because Plaintiff had filed Notices of Appeal. Amended Complaint (Docket No. 28), ¶ 55. Tennessee law provides, however, that a Juvenile Court has the authority to enforce its prior orders pending appeal. Tenn. Code Ann. § 37-1-159(b) ("An appeal does not suspend the order of the juvenile court, nor does it release the child from the custody of that court . . ..").

[8]       The Court notes that, even if it had jurisdiction over the claims against Defendant Guffee, Defendant Guffee is entitled to absolute judicial immunity from liability in damages for her judicial or adjudicatory acts. *See, e.g. Shelton v. Wallace*, 886 F.Supp. 1365, 1370 (S.D. Ohio 1995) and *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).

15

Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to all federal claims against Defendant Guffee in her individual capacity, and those claims are DISMISSED.

<u>DEFENDANTS MARTIN, BENNETT AND ROUNSAVALL</u>

Plaintiff alleges that Defendants Martin, Bennett and Rounsavall acted in concert with the other Defendants to violate Plaintiff's and Daughter's due process rights in the same ways Defendant Guffee did. Amended Complaint (Docket No. 28), ¶ 74. To the extent these claims are the same claims as those against Defendant Guffee, they are barred by the *Rooker-Feldman* Doctrine for the reasons stated above.

Plaintiff also contends that Defendant Martin violated Plaintiff's due process rights by deceiving Plaintiff in a phone conversation as to the purpose of the August 4, 2008 hearing. Plaintiff argues that Defendant Martin presented evidence to Defendant Guffee on July 31, 2008, in violation of Plaintiff's due process rights. To the extent that Defendant Martin's phone call to Plaintiff was pursuant to a court Order, Plaintiff's claim is barred by *Rooker-Feldman*. To the extent Defendant Martin falsely described the purpose of the August 4, 2008 hearing, the Court finds that no constitutional right was violated. Plaintiff alleges no constitutional injury which resulted from this alleged deception. In addition, to the extent Plaintiff alleges that Defendant Martin deprived Plaintiff and Daughter of due process rights by presenting evidence to the Juvenile Court Referee, that claim is barred by *Rooker-Feldman* because the source of Plaintiff's alleged injury is the court's Order. Finally, for the reasons set forth below, Defendant Martin is entitled to quasi-judicial immunity for those actions taken in direct accordance with the Juvenile Court's orders.

Plaintiff alleges that Defendants Bennett and Rounsavall violated the constitutional due process rights of Daughter by filing a petition for violation of a valid court order with the Juvenile

16

Court. The Court finds that claims for such actions are barred by *Rooker-Feldman* because the source of Plaintiff's alleged injury is the state court's Order.

For the same reasons Plaintiff's ADA and Rehabilitation Act claims fail against Defendant LaBo (no individual liability), those claims fail against Defendants Martin, Bennett and Rounsavall as well.

For these reasons, Defendants' Motion to Dismiss Plaintiff's federal claims against Defendants Martin, Bennett and Rounsavall is GRANTED, and those claims are DISMISSED.

<u>DEFENDANT COFFEY</u>

Plaintiff alleges that Defendant Coffey conducted an illegal search and seizure by removing one of Plaintiff's minor children from her public school class and interrogating her without permission or consent from Plaintiff. Amended Complaint (Docket No. 28), ¶ 79. If Plaintiff is claiming that the minor child's constitutional rights were violated, Plaintiff cannot recover for any such alleged violation because that minor child is not a Plaintiff (or purportedly represented by Plaintiff) herein. Fourth Amendment rights are personal rights which may not be vicariously asserted. *Rajas v. Illinois*, 99 S.Ct. 421, 425 (1978).

If Plaintiff is claiming that Defendant Coffey violated Plaintiff or Daughter's constitutional rights, then she has failed to state a claim because this incident did not involve a search or seizure of Plaintiff or Daughter. In any event, because Defendant Coffey was conducting an investigation into the whereabouts of Daughter pursuant to an Order of the Williamson County Juvenile Court, Plaintiff's claims would be barred by the *Rooker-Feldman* Doctrine, as the product of a state court judgment. In addition, Defendant Coffey would be entitled to quasi-judicial immunity for Plaintiff's claims related thereto.

Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered to be figurative arms of the very commanding judge who is immune. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *Shelton v. Wallace*, 886 F.Supp. 1365, 1371 (S.D. Ohio 1995). Just as a judge acting in her judicial capacity is absolutely immune from liability under Section 1983, an official charged with the duty of executing a facially-valid court order also enjoys immunity from liability from damages in a suit challenging conduct prescribed by that order. *Id.*

It does not appear that Plaintiff is alleging an ADA or Rehabilitation Act claim against Defendant Coffey. To the extent she is, however, that claim is barred for the same reasons stated above with regard to Defendant LaBo (no individual liability).

Defendants' Motion for Summary Judgment as to the federal claims against Defendant Coffey is GRANTED, and those claims are DISMISSED.

DEFENDANTS ZOLLICOFFER AND CASILLAS

Plaintiff's Amended Complaint alleges that Defendants Zollicoffer and Casillas violated Daughter's constitutional rights by incarcerating her pursuant to an illegal Order. Amended Complaint (Docket No. 28), ¶¶ 77 and 82. To the extent Plaintiff's alleged injury arises from the Juvenile Court Order, those claims are barred by the *Rooker-Feldman* Doctrine, as explained above.

In addition, as with Defendant Coffey, Defendants Zollicoffer and Casillas were carrying out the orders of the Juvenile Court and are entitled to "quasi-judicial" immunity for their actions. As noted above, quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered to be figurative arms of the

18

very commanding judge who is immune. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); *Shelton v. Wallace*, 886 F.Supp. 1365, 1371 (S.D. Ohio 1995).

A nonjudicial officer who is delegated judicial duties in aid of the court should not be a lightning rod for harassing litigation aimed at the court. *Shelton*, 886 F.Supp. at 1372. With specific respect to law enforcement officials, courts have recognized that such officials should not have to engage in second-guessing and defying a court's order. *Id*. Although Plaintiff claims the Order of the Juvenile Court was illegal, she has not shown that the Order was facially invalid or that Defendants Zollicoffer and Casillas should have known the Order was illegal and defied it. Accordingly, Defendants Zollicoffer and Casillas are entitled to quasi-judicial immunity under the cases cited above.

For the same reasons Plaintiff's ADA and Rehabilitation Act claims fail against Defendant LaBo (no individual liability), those claims fail against Defendants Zollicoffer and Casillas as well.

Defendants' Motion to Dismiss is GRANTED as to Defendants Zollicoffer and Casillas, and Plaintiff's federal claims against these Defendants are DISMISSED.[9]

## DEFENDANT WILLIAMSON COUNTY

To the extent Plaintiff is asserting a Section 1983 claim against Williamson County, the Court notes that there is no *respondeat superior* liability under Section 1983. Liability may be assessed against a municipal defendant under Section 1983 only for constitutional violations that were caused by a policy of the municipality. *Monell v. Department of Social Servs. of City of New*

---

[9] The Court does not read the Amended Complaint as stating a Fourth Amendment claim for excessive force against Defendants Zollicoffer and Casillas. However, to the extent Plaintiff is asserting such a claim, the Court finds that the alleged conduct of these Defendants in effecting Daughter's arrest was insufficient to constitute excessive force under the U.S. Constitution. *See, e.g., Neague v. Cynkar*, 258 F.3d 504, 507-08 (6th Cir. 2001).

19

*York*, 436 U.S. 658, 694 (1978), or if the constitutional violation occurs because of a governmental custom which, though not formally approved as a policy, is nonetheless an established usage or course of conduct. *Id*. at 690-91. Regardless of how the policy arises, the Plaintiff must show: (1) a municipal policy exists, and (2) the policy was the moving force behind the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

Here, Plaintiff has not identified any specific policy or custom of Williamson County which violated constitutional rights, other than to allege that "the course of conduct and the collaboration of the defendants establish a custom for ongoing and deliberate acts" violating Plaintiff's and Daughter's rights. Amended Complaint (Docket No. 28), ¶ 72. Neither has Plaintiff connected any policy or custom of Williamson County to a specific injury sustained by Plaintiff or Daughter in this case. Plaintiff has asserted that certain state statutes followed by the Williamson County Defendants are unconstitutional. Those laws are state statutes, however, not county policies or customs.

Moreover, because the Court has found that none of the individual Williamson County Defendants has violated Plaintiff's constitutional rights - - - that is, there is no underlying constitutional violation - - - there can be no derivative claim against Defendant Williamson County for the same alleged misconduct.[10]

To the extent Plaintiff is asserting an ADA claim against Defendant Williamson County, which is a "public entity" under Title II, the Court notes that to establish such a claim, Plaintiff must prove: (1) Daughter has a disability; (2) Daughter was otherwise qualified; and (3) Daughter was excluded from participation in, denied the benefits of, or subjected to discrimination under the

---

[10] Plaintiff's Response brief appears to assert failure to train and failure to supervise claims (Docket No. 37, p. 18), but those claims are not asserted in the Amended Complaint.

services, programs or activities of Williamson County, solely because of her disability. *Jones v. City of Monroe, Michigan*, 341 F.3d 474, 477 (6th Cir. 2003). Defendants argue that Plaintiff has failed to allege that Daughter has a physical or mental impairment that substantially limits one or more major life activities.

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in the programs or activities provided by a public entity. 42 U.S.C. § 12131(2). "Disability" is defined under the ADA as having "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A).

Plaintiff's Amended Complaint alleges that Daughter is a "special needs" child with learning challenges, attention deficit disorder, poor social cognition, difficulty in managing self-direction, hyper-sensitive emotional level and deficient language processing skills. Docket No. 28, ¶ 2. In response to the Motion to Dismiss, Plaintiff contends that Daughter is impaired in the major life activity of learning. Docket No. 37, p. 26. Learning is listed as an example of a "major life activity" in the regulations promulgated pursuant to the ADA. 16 CFR § 1630.2(i). Thus, for purposes of this Motion to Dismiss, Plaintiff has sufficiently alleged that Daughter is a qualified individual with a disability under Title II of the ADA.

Plaintiff must also show, however, that Daughter was *intentionally* excluded from participation in, denied the benefits of, or subjected to discrimination under the services, programs or activities of Williamson County, *solely because of her disability. Tucker v. Tennessee*, 539 F.3d

21

526, 533 (6th Cir. 2008). Plaintiff must show that the discrimination was intentionally directed toward Daughter in particular. *Id*. at 532.

To the extent Plaintiff's claimed injury arose from the Juvenile Court Orders, her claims are barred by the *Rooker-Feldman* Doctrine for the reasons set forth above. To the extent that Plaintiff claims a source of injury independent of the Juvenile Court's Orders, the Court finds that Plaintiff has not shown the Daughter was intentionally excluded from participation in, denied the benefits or, or subjected to discrimination under the services, programs or activities of Williamson County solely because of her disability. Plaintiff has not demonstrated that Daughter was singled out solely because of her disability or personally denied the benefit of anything being provided by Williamson County to non-disabled juveniles.

For these reasons, Defendants' Motion to Dismiss Plaintiff's federal claims against Defendant Williamson County is GRANTED, and those claims are DISMISSED.

STATE LAW CLAIMS

Having dismissed Plaintiff's federal claims against the Williamson County Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against them, pursuant to 28 U.S.C. § 1367(c)(3). Plaintiff's state law claims against the Williamson County Defendants are DISMISSED without prejudice.

CONCLUSION

For all these reasons, Defendant LaBo's Motion for Summary Judgment (Docket No. 29) is GRANTED, and Defendants Guffee, Martin, Bennett, Rounsavall, Coffey, Zollicoffer, Casillas and Williamson County's Motion to Dismiss or for Judgment on the Pleadings (Docket No. 32) is GRANTED. All federal claims against Defendant LaBo and the Williamson County Defendants are

22

DISMISSED with prejudice. All state law claims against these Defendants are DISMISSED without prejudice.

There is also pending before the Court a Motion to Dismiss filed by the State of Tennessee and the Tennessee Department of Children's Services employees (Docket No. 40). Plaintiff shall respond to that Motion by March 16, 2009, in accordance with the Order of the Magistrate Judge. Docket No. 43.

IT IS SO ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE